[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14747
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 23, 2012
JOHN LEY
CLERK

Agency No. A098-548-502

RRUGA SOKOL,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(February 23, 2012)

Before EDMONDSON, BARKETT and ANDERSON, Circuit Judges.

PER CURIAM:

Rruga Sokol, a native and citizen of Albania, petitions for review of the

order by the Board of Immigration Appeals ("BIA") affirming the decision of the

Immigration Judge ("IJ"). The IJ's decision denied asylum and withholding of removal.[1] No reversible error has been shown; we dismiss the petition in part and deny it in part.

We review the BIA's decision in this case because the BIA did not expressly adopt the IJ's decision. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (noting that we review the BIA's decision; but "[i]nsofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well"). We review de novo legal determinations of the BIA. Id. Factual determinations are reviewed under the "highly deferential" substantial evidence test; and we must "affirm the . . . decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (citation omitted). To reverse a fact determination, we must conclude "that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

An alien may obtain asylum if he is a "refugee," that is, a person unable or unwilling to return to his country of nationality "because of persecution or a well-

---

[1] The IJ also denied relief under the Convention Against Torture. Because Sokol did not challenge meaningfully this denial in his appeal to the BIA, he failed to exhaust his administrative remedies; and we lack jurisdiction to consider this issue. See Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250-51 (11th Cir. 2006).

2

founded fear of persecution on account of" a protected ground, including political opinion. 8 U.S.C. §§ 1101(a)(42)(A); 1158(a)(1), (b)(1). The asylum applicant bears the burden of proving statutory "refugee" status with specific and credible evidence. Forgue, 401 F.3d at 1287.

Sokol sought relief based on his political opinion and membership in a particular social group. Sokol joined the Democratic Party in 1992 and became an organizer in 2000, when the country was under the control of the Socialist Party. In 2002, Sokol was arrested by members of the Albania State Intelligence Service -- also known as the SHISH -- for his leadership role in the Democratic Party. He was held for two days, during which he was beaten and threatened. After his release, he sought medical attention. His medical records indicated that he had been hit in the head with a hard object, but that his overall condition was "generally good."

In 2003, SHISH members kidnapped and raped one of Sokol's sisters and attempted to kidnap his other sister. A couple of weeks later, someone poisoned the family dog, set fire to Sokol's car, and wrote "we're going to hang the democrats" on his family's home. After these incidents, Sokol and his family went into hiding, obtained false passports, and left for the United States.

The BIA agreed with the IJ's assessment that -- even if Sokol's testimony

was credible and he established past persecution on account of his political opinion -- the government had met its burden of rebutting the presumption of a well-founded fear of future persecution by demonstrating a fundamental change in country conditions. The BIA also agreed with the IJ's conclusion that Sokol was ineligible for humanitarian asylum because the harm he suffered was not severe enough to compel relief. Because Sokol failed to satisfy the lower burden of proof required for asylum, the BIA also denied withholding of removal.

On appeal, Sokol argues that the BIA erred when it concluded that the government presented sufficient evidence to rebut the presumption that he had a well-founded fear of persecution. An asylum applicant who has established past persecution on a protected ground is presumed to have a well-founded fear of future persecution on the basis of the original claim. 8 C.F.R. § 208.13(b)(1). The government may rebut this presumption by showing, by a preponderance of the evidence, either (1) a fundamental change in the country's conditions such that the applicant no longer has a well-founded fear of persecution, or (2) that relocation within the country would avoid future persecution. 8 C.F.R. § 208.13(b)(1)(i)(A), (B).

We conclude that substantial evidence supported the BIA's finding that there had been a "fundamental change" in Albania that negated Sokol's well-

4

founded fear of future persecution. In making that determination, the BIA relied heavily on various State Department reports about Albania.[2] These reports indicated -- and Sokol conceded -- that the Democratic Party had taken control of the country in 2005. The reports also made these conclusions: (1) Albania had experienced an overall improvement in political freedom since the early 2000s, such that the public generally could criticize the government without fear of reprisals; (2) the SHISH forces had been reduced and were no longer involved in political activity; and (3) nothing evidenced that the Socialist Party was engaged in a pattern of repression or violent behavior toward members of the Democratic Party. No bright line rule dictates what constitutes a "fundamental change." See Imelda, 611 F.3d at 729. But because both a change in governmental regime and a substantial decline in violence against a persecuted group -- as seen here -- may signify that a country has undergone a "fundamental change," we are not

_____

[2]Sokol argues that the BIA's reliance on the State Department reports was improper. We disagree. The BIA is permitted to rely on such reports as long as it also conducts an individualized analysis of the relationship between the specific harm suffered and the information contained in the reports. Imelda v. U.S. Att'y Gen., 611 F.3d 724, 728-29 (11th Cir. 2010) (concluding that the BIA erred in relying solely on the State Department's country report for Indonesia because it did not engage in the required individualized analysis of applying country conditions reported by the State Department to the particular circumstances of the petitioner when the State Department report indicated only that conditions for Christians had improved in two regions of the country but failed to address whether conditions had improved in the petitioner's home region or in the country in general). Because State Department reports on Albania country conditions directly rebut the presumption that Sokol has a well-founded fear of future persecution by the SHISH or by the Socialist Party, the BIA did not err in relying on the reports.

compelled to reverse the BIA's decision.  See id. at 729-30.

Although the Department of State reports also contained negative information about the conditions in Albania, we are not permitted -- under the substantial evidence test -- to reweigh the importance attributed to the evidence in the record.  See Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1175 (11th Cir. 2008). In addition, "the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of administrative findings."  Adefemi v. Ashcroft, 386 F.3d 1022, 1029 (11th Cir. 2004).

Substantial evidence also supports the BIA's decision to deny Sokol humanitarian asylum.[3]  Even in the absence of a well-founded fear of future persecution, an applicant may be eligible for humanitarian asylum if he demonstrates "compelling reasons for being unwilling or unable to return" to his home country.  Mehmeti v. U.S. Att'y Gen., 572 F.3d 1196, 1200 (11th Cir. 2009). Such relief is available only in the "most extraordinary cases," in which an applicant shows "severe harm" and "long-lasting effects."  Id. at 1200-01 (listing as examples "the German Jews, victims of the Chinese 'Cultural Revolution,' and

---

[3]Sokol argues that the BIA abused its discretion in denying his motion to remand to the IJ for consideration of new evidence.  Because the evidence he sought to introduce -- his sister's asylum application -- was available before his removal hearing, it was within the BIA's discretion to deny his motion.  See Chacku v. U.S. Att'y Gen., 555 F.3d 1281, 1286 (11th Cir. 2008).

survivors of the Cambodian genocide"). We review denials of humanitarian asylum under the substantial evidence standard. Id. Sokol was mistreated during his 2002 detention. Still, he was held for only two days and his overall condition immediately following his release was "generally good." He also failed to offer evidence that he suffered long-lasting effects as a result of that detention or the 2003 attacks against his family and home.[4]

Substantial evidence supports the BIA's decision that Sokol was unentitled to asylum; and we are not compelled to reverse the BIA's decision. Sokol's failure to establish eligibility for asylum forecloses his eligibility for withholding of removal. See Forgue, 401 F.3d at 1288 n.4.

PETITION DISMISSED IN PART, DENIED IN PART.

---

[4]The record demonstrates that Sokol had been arrested three other times. In 1989, he was arrested after trying to flee Albania and detained for one year, during which he was beaten daily and starved. He was also arrested twice -- once in 1991 and once in 1998 -- for participating in political demonstrations: detained for eight hours and two days, respectively. Although he alleges that he was mistreated during each of these detentions, he explained in his appeal to the BIA that these detentions were for background information only and were not connected to his claims for relief. Thus, he affirmatively abandoned a claim for relief based on these earlier arrests.